UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JOHNY GABRIEL PEREZ-SANCHEZ,

Petitioner,

v.

JASON KNIGHT, Field Office Director of Enforcement and Removal Operations, Salt Lake City Field Office, Immigration and Customs Enforcement; KENNETH PORTER, Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office; BOYD G. BRIGGS, Supervisory Deportation Officer, Twin Falls Sub-Office, Immigration and Customs Enforcement; KYLE J. CAMPBELL, Deportation Officer, Twin Falls Sub-Office, Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, U.S. Attorney General; and JARROD THOMPSON, Sheriff of Cassia County,

Respondents.

Case No. 1:26-cv-00393-AKB

**ORDER DENYING MOTION TO ENFORCE COURT ORDER**

Pending before the Court is Petitioner Johny Gabriel Perez-Sanchez's Motion to Enforce the Court's July 23, 2026, Order and for Immediate Release; or, in the Alternative, to Alter or Amend the Judgment Under Fed. R. Civ. P. 59(e) (Dkt. 16; Dkt. 17). For the reasons explained below, the Court denies the motion to enforce.

## I. BACKGROUND

On June 26, 2026, Petitioner filed a petition for writ of habeas corpus, arguing that his detention is unlawful because the Department of Homeland Security (DHS) and the Executive

Office of Immigration Review (EOIR) have determined he is subject to mandatory detention without the possibility of bond under 8 U.S.C. § 1225(b)(2)(A) (Dkt. 1 ¶¶ 1, 5). On July 23, the Court granted his petition in part, finding that Petitioner's detention was governed by § 1226(a); however, because Respondents made a showing of danger to the community and risk of flight, the Court determined that release was not the appropriate remedy (Dkt. 15 at 4–5). Accordingly, the Court ordered Respondents to provide Petitioner with an individualized bond hearing before an immigration judge (IJ) within seven days of the Order (*id.* at 5). The Court advised that the failure to provide Petitioner with an individualized bond hearing that comports with the basic requirements of due process could result in Petitioner's release (*id.*).

Following the Court's July 23 Order, Petitioner's counsel contacted the ICE Twin Falls Sub-Office and spoke with an officer who indicated that the office would follow up regarding whether Petitioner would be released or receive a bond hearing (Dkt. 16 at 6). At that time, counsel had not entered an appearance in Petitioner's immigration proceeding and therefore was not receiving notices from the Immigration Court (*id.* at 7). On July 28, an ICE officer and a DHS attorney informed Petitioner's counsel that a bond hearing had been scheduled (*id.*). Counsel then filed a notice of entry of appearance in the immigration proceeding and obtained access to the electronic record of proceeding (*id.*). The Government provided Petitioner with the materials it intended to rely upon at approximately 11:30 a.m. that day (*id.*). Counsel subsequently filed a motion for bond redetermination, supporting brief, and exhibits approximately fifteen to twenty minutes before the July 29 hearing (*id.* at 8).

On July 29, Petitioner went before an IJ in the Tacoma Immigration Court for a bond hearing (Dkt. 16 at 2; Dkt. 20 at 2). The IJ denied bond, finding Petitioner to be a flight risk (*id.* at 4; Dkt. 16-1 at 1). Petitioner was represented at the hearing and submitted a brief and evidence in

support (Dkt. 16 at 12). The IJ admitted he received Petitioner's materials during the hearing but noted he would "take a quick look at them," to which Petitioner's counsel responded, "fair enough" (Dkt. 20-2 at 3:50–4:25). Petitioner then testified with an interpreter present, was cross-examined, offered the opportunity for rebuttal, and gave closing argument (*id.*). Respondents argued Petitioner was a flight risk because he had reentered the United States following prior DHS removals, used other individuals' identifying information to obtain employment wages, failed to appear in state criminal proceedings, and recently violated the terms of his state DUI probation by committing a new offense—driving without privileges (*id*. at 28:43–35:43). Petitioner argued he was not a flight risk because "the bond is about what he's doing now" and that his state court supervision mitigated any risk of flight (*id.* at 23:46–24:10, 30:29–35; Dkt. 16 at 12). Petitioner also argued that he has one United States citizen child with speech and developmental issues requiring further medical evaluation who is dependent on him (Dkt. 20-2 at 9:15–10:20, 27:58–28:22; Dkt. 16-4 at 2). The IJ denied bond, finding Petitioner was a flight risk under both the clear-and-convincing-evidence and preponderance-of-the-evidence standards (*id.* at 37:37–38:23).

On July 30, Petitioner filed a motion to enforce the Court's July 23 Order, arguing that he was not provided meaningful advance notice of the hearing or a meaningful opportunity to review Respondent's materials (Dkt. 16 at 14). Petitioner further argues that counsel's opportunity to be heard was materially limited because the IJ denied counsel's request for a continuance, despite the fact that Petitioner's motion, brief, and exhibits were filed less than twenty minutes before the hearing (*id.* at 14–15). Respondents filed a combined status report and response, along with an audio recording of the hearing (Dkt. 20). The Court has reviewed all filings and the motion is ripe for a decision.

## II. ANALYSIS

In his motion, Petitioner avers that the bond hearing failed to satisfy the requirements of the Court's July 23 Order because he was not afforded a meaningful opportunity to review the Government's evidence or present evidence and argument before the IJ (Dkt. 16 at 14). The Government disagrees, maintaining that Petitioner identified no actual prejudice caused by the expedited timeline (Dkt. 20 at 3).

### A. Jurisdiction

"When a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional or other federal rights." *Harvest v. Castro*, 531 F.3d 737, 741 (9th Cir. 2008) (citation modified). Although "courts originally confined habeas relief to orders requiring the petitioner's unconditional release from custody," in modern practice "courts employ a conditional order of release in appropriate circumstances, which orders the State to release the petitioner unless the State takes some remedial action." *Id.* In those instances, "the district court ha[s] authority to review compliance with [the] earlier order conditionally granting habeas relief." *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011); *see also* Fed. R. Civ. P. 70(a) ("If a judgment requires a party . . . to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done."). And "if a state 'fails to cure the constitutional error, i.e., when it fails to comply with the order's conditions . . . the conditional grant of habeas corpus requires the petitioner's release from custody.'" *Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020) (quoting *Harvest*, 531 F.3d at 750).

Here, the Court ordered that Respondents either: (1) conduct an individualized bond hearing pursuant to § 1226 which comports with basic due process requirements within seven days, or (2) release Petitioner (Dkt. 15 at 5). The Court therefore has jurisdiction to review whether the IJ applied the required standard.

**B. Enforcement of Order Conditionally Granting the Petition**

The Court now considers the limited question of whether Respondents complied with the Court's Order requiring Respondents to provide Petitioner with an individualized bond hearing pursuant to § 1226(a) that comports with the basic requirements of due process.

First, Petitioner argues the bond hearing did not comport with due process because he was not provided meaningful advance notice of the hearing or a meaningful opportunity to review the Government's materials (Dkt. 16 at 14). Counsel complains that he did not receive notice until July 28—one day before the bond hearing—when Respondents contacted his office, prompting him to enter an appearance (*id.* at 7). Notably, counsel had not entered an appearance in Petitioner's immigration proceeding and therefore was not entitled to receive notices from the Immigration Court (*id.*). Counsel provides no explanation for why he could not have filed his notice of appearance before July 28. The Court also notes that nothing in the July 23 Order required Respondents to provide notice of the bond hearing to Petitioner's counsel. Thus, the absence of advance notice to counsel was not the result of any failure by Respondents to comply with due process or the Court's July 23 Order.

Petitioner further contends that his opportunity to be heard was materially limited because the IJ denied counsel's request for a continuance, even though Petitioner's motion, brief, and exhibits were filed less than twenty minutes before the hearing (*id.* at 14–15). But counsel did not explicitly ask for a continuance; rather, he merely stated that he would like the court to be able to "have an opportunity to review" his filings (Dkt. 20-2 at 3:50–4:11). The IJ noted that he received Petitioner's filings and that he would "take a quick look at them," to which counsel responded, "fair enough" (Dkt. 20-2 at 4:10–25). After briefly reviewing Petitioner's filings, the IJ proceeded with the hearing (Dkt. 20-2 at 3:50–6:13). If Petitioner believed additional time was necessary, counsel could have expressly requested a continuance and given the IJ an opportunity to rule on

that request. The Court will not now interpose itself in the immigration proceedings to address an objection that was not squarely presented to the IJ in the first instance.

Petitioner also contends that the IJ incorrectly held that the Government proved by "clear and convincing evidence" that Petitioner was a flight risk, rather than the correct standard of Petitioner establishing by a preponderance of evidence that he was not likely to abscond (Dkt. 16 at 4). The record, however, does not support Petitioner's characterization of the IJ's ruling.[1] The IJ explained that, regardless of which party bore the burden, the record established by the higher clear-and-convincing-evidence standard that Petitioner was a flight risk (Dkt. 20-2 at 37:37–38:23). Although the IJ did not repeat this analysis when announcing his decision, he explained his reasoning at length during the approximately thirty-five minutes preceding the ruling.

Next, Petitioner contends that the IJ did not make an individualized determination under the correct standard (Dkt. 16 at 12–13). "In a constitutionally valid bond hearing, an alien '(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her, (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests.'" *Garcia Ortiz v. Henkey*, No. 26-cv-00043-BLW, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (quoting *Kamara v. Att'y Gen. of the U.S.*, 420 F.3d 202, 211 (3d Cir. 2005)). Where a non-citizen is detained pursuant to § 1226(a),

---

[1] The Court notes that Petitioner's motion contains several mischaracterizations of the bond hearing. For example, Petitioner characterizes the IJ's questioning regarding his marital status and religion as an improper inquiry into whether his church condoned his having a child with another woman while married (Dkt. 16 at 8–9), but the recording reflects that the IJ was attempting to clarify Petitioner's statements regarding his wife in Mexico, his child's mother in the United States, and their relationship through the church (Dkt. 20-2 at 9:00–11:30, 13:20–15:21). Petitioner similarly characterizes the scope of his ability to present argument (Dkt. 16 at 12) (arguing counsel was not permitted to present his full argument), while the record reflects that counsel was provided with multiple opportunities to present argument before the IJ ruled (Dkt. 20-2 at 23:29, 26:43, 35:45).

the Ninth Circuit has held that an IJ should consider the factors set forth at *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006), in determining whether release is appropriate. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008).

Those factors include: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). Of those factors, "the alien's criminal record—including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses"—is "most pertinent to assessing dangerousness" *Id.* (quoting *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011)). The IJ should consider only evidence in the record and create a "Record of Proceeding." 8 C.F.R. § 1003.36.

Here, the IJ conducted an individualized bond hearing on July 29, 2026, and ultimately found Petitioner to be a flight risk. The IJ asked Petitioner directly about when he entered the United States, how many children he has, and his marital status (Dkt. 20-2 at 9:00–11:46). Petitioner admitted that his son is the only family he has in the United States (*id.* at 11:47–12:49). The IJ also considered Petitioner's criminal history, probation status, and prior immigration encounters (*id.* at 23:29–26:20). In determining that Petitioner had not met his burden of demonstrating that he was not a flight risk, the IJ relied on Petitioner's use of a false Social Security number for employment purposes; immigration history; eligibility for relief from removal; violation of state probation; and failures to appear in state court proceedings (Dkt. 20 at 2; Dkt. 20-

2 at 28:24–28:42, 29:45–30:31). The IJ also noted that Petitioner continued to drive to work, despite not having a license and having been previously convicted of driving without permission (Dkt. 20-2 at 25:08–26:20), and emphasized that Petitioner had twice been removed to Mexico after entering the United States illegally before later reentering a third time "without permission"(*id.* at 29:45–30:31).

The evidence the IJ considered was relevant to the flight risk determination because it concerned Petitioner's history of failing to comply with the law and court orders. Petitioner's qualm is that, although the IJ addressed Petitioner's criminal history, probation status, and past immigration encounters, he did not "meaningfully address Petitioner's rebuttal evidence or proposed conditions of release" (Dkt. 16 at 3–4). But the record reflects that the IJ considered the evidence presented by Petitioner and heard counsel's arguments concerning his criminal history and risk of flight, and that the IJ asked clarifying questions during counsel's presentation (Dkt. 20-2 at 23:27–26:20). Petitioner's disagreement with how the IJ weighed that evidence misses the point. The IJ enjoys wide discretion in determining whether an alien is a flight risk. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022). The *Guerra* considerations identified above plausibly relate to Petitioner's likelihood of fleeing, and it is well settled that the IJ may give greater weight to certain factors over others in coming to a reasonable decision. *See In re R-A-V-P*, 27 I. & N. Dec. 803, 804–05 (BIA 2020), *abrogated on other grounds by Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021). The mere fact that the IJ reached a conclusion unfavorable to Petitioner does not establish that the hearing was constitutionally deficient.

This case is also distinguishable from *Garcia Ortiz*, 2026 WL 948275. There, the Court granted petitioner's motion to enforce because the IJ failed to create a record of the bond hearing and improperly relied on a police report that was not in the record. *Id.* at *1, 3. The Court therefore

concluded that the proceedings demonstrated that the IJ had not truly considered the evidence before him. *Id.* at *4. Here, by contrast, the IJ created a record of Petitioner's bond hearing; considered the evidence presented by the parties; permitted counsel to make arguments regarding Petitioner's risk of flight; and made an individualized determination based on the record (Dkt. 20-2). As a noncitizen detained under § 1226(a), Petitioner has a statutory right to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Petitioner was afforded that bond hearing, and the record provides a rational basis for the IJ's finding that Petitioner was a flight risk. That this Court might have drawn a different conclusion from the evidence were its review de novo is not the appropriate standard, given the very circumscribed nature of collateral review of agency bond determinations by federal district courts. Therefore, the IJ made an individualized determination of Petitioner's flight risk.

The Court therefore finds that Respondents complied with the Court's July 23 Order. Any further challenge to the IJ's decision must be presented to the Board of Immigration Appeals (BIA). 8 C.F.R. § 236.1(d)(3). Accordingly, Petitioner's motion to enforce is denied.

## III. ORDER

**IT IS ORDERED that:**

1. Petitioner's Motion to Enforce Court Order [Dkt. 10] (Dkt. 16; Dkt. 17) is **DENIED**.

DATED: August 26, 2026

Amanda K. Brailsford
U.S. District Court Judge